UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

RONALDO DESIGNER JEWELRY, INC.                                        PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:12CV807DPS-FKB

RUNNING WILD WHOLESALE, L.L.C.
D/B/A CHEAP CHIC and
JOHN DOES Numbers 1 through 99                                        DEFENDANTS

**VERIFIED COMPLAINT**
(JURY TRIAL IS DEMANDED)

Comes now Plaintiff, Ronaldo Designer Jewelry Inc., by counsel, and for its cause of

action against Defendants, Running Wild Wholesale, L.L.C. d/b/a Cheap Chic and John Does

Numbers 1 through 99, states as its Complaint, the following:

**INTRODUCTION**

1.      This is a Complaint for injunctive relief and for civil damages.  Count I states a

claim for Copyright Infringement pursuant to 17 U.S.C. §101 *et seq.* by and through Defendants'

unlawful copying, reproduction, manufacture, importation, distribution, sale and use of Plaintiff's

copyrighted works in Defendants' products which they market and sell to the public; Count II

states a claim for Common Trademark Infringement by and through Defendants' use of Plaintiff's

trademarks in which Plaintiff enjoys a superior common law right to that of Defendants; Count

III states a claim for Unfair Trade Practices and Unfair Competition pursuant to the Lanham Act,

15 U.S.C. § 1125(a), by and through Defendants' use of Plaintiff's common law trademarks,

Defendants' false representations, and Defendants' other acts which lead and will in the future

lead the public, through mistake or deception, to believe that Defendants' competing, inferior

products are authorized or sponsored by or originate with or are otherwise associated with the

Plaintiff; and Count IV states a claim for Common Law Unfair Trade Practices and Unfair

Competition.

## PARTIES

2.      Plaintiff Ronaldo Designer Jewelry, Inc. ("Ronaldo") is a Kentucky corporation with its principal place of business located at Suite 1100, One Riverfront, 401 West Main Street, Louisville, Kentucky 40202.

3.      Defendant Running Wild Wholesale, L.L.C. ("Running Wild") is a Louisiana limited liability company doing business in Mississippi, doing business as Cheap Chic, and having its principal place of business at 172 Katie Lane, Ruston, Louisiana 71270. Running Wild may be served with process by service upon its registered agent, Jeffrey Powell McGehee, at 172 Katie Lane, Ruston, Louisiana 71270.

4.      John Does Nos. 1 through 99 are fictitious names for Defendant persons or business entities which have reproduced, manufactured, copied, imported, distributed, displayed, and sold the infringing works that comprise the subject of this Complaint, for or on behalf of the Defendant named at numerical paragraph 3 above, or in concert or privity with it, including said Defendant's manufacturers, importers, distributors, brokers, and vendors, and for Defendant persons, including corporate officers, directors, managers, operators, representatives, and agents, or business entities having the right to supervise the infringing activities, or having a financial interest therein. The true identities of these Defendants are yet unknown to Plaintiff.

5.      At all times relevant herein, Defendants were variously engaged in the business of manufacturing, reproducing, marketing, promoting, importing, distributing, displaying, and selling, among other things, metal jewelry, merchandise, and materials embodying and otherwise incorporating the infringing works that comprise the subject of this lawsuit.

6.      Defendant Running Wild has offered the products that are the subject of this dispute for sale in interstate commerce, including, upon information and belief, to stores or individuals in the Southern District of Mississippi, as well as in other retail outlets in other states.

## JURISDICTION AND VENUE

7.      Jurisdiction is possessed by this Court pursuant to 28 U.S.C. §1331, and 28 U.S.C. §1338 as the Complaint alleges violations of federal Copyright Law and the Lanham Act. This Court has jurisdiction over the claim for common law unfair trade practices and unfair competition herein pursuant to 28 U.S.C. §1338(b) and 1367, and under the doctrines of pendent and supplemental jurisdiction, since these claims are joined with substantial and related claims under the Copyright Laws and Lanham Act Laws of the United States.   Additionally and alternatively, this Court has original diversity jurisdiction over this controversy pursuant to 28 U.S.C. §1332(a)(1), as the parties are residents of different states and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

8.      Venue in the Southern District of Mississippi is proper under 28 U.S.C. §§1391(b) because a substantial part of the events giving rise to these claims arose within the Southern District of Mississippi, which is sufficient for jurisdiction under Mississippi's Long-Arm Statute, and Defendant has transacted business and committed its infringing and tortious acts within Mississippi. In this regard, upon information and belief, Defendant Running Wild is and at all relevant times has been marketing and selling goods, including, upon information and belief, the infringing works that are the subject of this lawsuit, from the Canton Flea Market in Canton, Mississippi within the Southern District of Mississippi directly and indirectly to individuals and entities residing and transacting business in the Southern District of Mississippi.

3

Upon information and belief, Defendant Running Wild is and at all relevant times has additionally been advertising and selling goods indirectly over the Internet (*See* http://www.cheapchicjewelry.com and http://www.runningww.com) to residents of the Southern District of Mississippi who can access said goods through that electronic medium.

**COUNT I**

**COPYRIGHT INFRINGEMENT**

9.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 8 herein as though fully set forth.

10.    At all times relevant herein, Plaintiff was variously engaged in the business of manufacturing, marketing, distributing, and selling decorative jewelry and accessories.

11.    In or about 1995, Plaintiff, through its predecessor in interest, created its work known as "The Power of Prayer Bracelet," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit A. (This item and the items displayed in Exhibits E, G, J, N, Q, S, V, and Z are collectively referred to herein as "Plaintiff's Works.")



12.    Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets, sold as

Item Nos. RW1804BGDPL, RW1737BGD, RW1738BSL, or RW1740BSLPL, which are substantially similar to the protected Work of Plaintiff referenced above, photographs of which are reproduced below, and incorporated collectively herein by reference as Exhibit B. (These items and the items displayed in Exhibits F, H, K, O, R, T, W, and AA are collectively referenced herein as the "Infringing Merchandise.")



Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "The Power of Prayer Bracelet" Work.

13.     Plaintiff, through its predecessor in interest, received from the United States Copyright Office Certificate of Registration VA 1-220-847, for the "The Ronaldo Collection" website in which the "The Power of Prayer Bracelet" Work is depicted, having an Effective Registration Date of December 7, 2001, which Certificate (including the assignment thereof) is attached hereto and incorporated herein by reference as Exhibit C.

5

14.     Plaintiff received from the United States Copyright Office Certificate of Registration VA 1-813-280, for the "The Power of Prayer Bracelet" Work, having an Effective Registration Date of April 17, 2012, which Certificate is attached hereto and incorporated herein by reference as Exhibit D.

15.     Plaintiff, through its predecessor in interest, created its work known as "The Wide Power of Prayer Bracelet," which is a decorative bracelet that is a derivative of the "The Power of Prayer Bracelet" Work, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit E.



16.     Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets, sold as Item Nos. RW1736BGDPL, RW1739BGD, RW1741BSLPL, or RW1742BSL, which are substantially similar to the protected Work of Plaintiff referenced above, photographs of which are reproduced below, and incorporated collectively herein by reference as Exhibit F.



17.     Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "The Wide Power of Prayer Bracelet" Work.

18.     In or about 2000, Plaintiff, through its predecessor in interest, created its work known as "Waverly Bracelet," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit G.



19.     Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets, sold as Item Nos. RW1812BGDPL, RW1813BSLPL, RW1743SL, and others, which are substantially similar to the protected Work of Plaintiff referenced above, photographs of which are reproduced below, and incorporated collectively herein by reference as Exhibit H.



20.     Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "Waverly Bracelet" Work.

21.     On or about April 20, 2012, Plaintiff applied to the United States Copyright Office to register its "Waverly Bracelet" Work, a copy of which application is attached hereto as Exhibit I. Plaintiff has not yet received the Federal Copyright Certificate therefor.

22.     In or about 1991, Plaintiff, through its predecessor in interest, created its work known as "Stackable Bracelet," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit J.

8



23.     Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets, which are substantially similar to the protected Work of Plaintiff referenced above, photographs of which are reproduced below, and incorporated herein collectively by reference as Exhibit K.

 

24.     Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "Stackable Bracelet" Work.

25.     Plaintiff, through its predecessor in interest, received from the United States Copyright Office Certificate of Registration VA 1-125-963, for the Gold Craft Fashions jewelry design and catalog in which the "Stackable Bracelet" Work is depicted, having an Effective Registration Date of December 7, 2001, which Certificate (including the assignment thereof) is attached hereto and incorporated herein by reference as Exhibit L.

26.     On or about November 7, 2012, Plaintiff applied to the United States Copyright Office to register its "Stackable Bracelet" Work, a copy of which application is attached hereto as Exhibit M.  Plaintiff has not yet received the Federal Copyright Certificate therefor.

27.     In or about 2000, Plaintiff, through its predecessor in interest, created its work known as "Pearl of My Heart," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit N.



28.     Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets, sold as Item Nos. RW1802BGD, RW1803BSL, and others, which are substantially similar to the protected Work of Plaintiff referenced above, photographs of which are reproduced below, and incorporated collectively herein by reference as Exhibit O.

 

29.     Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "Pearl of My Heart" Work.

30.      On or about April 20, 2012, Plaintiff applied to the United States Copyright Office to register its "Pearl of My Heart" Work, a copy of which application is attached hereto as Exhibit P.  Plaintiff has not yet received the Federal Copyright Certificate therefor.

31.     In or about 1991, Plaintiff, through its predecessor in interest, created its work known as "Forever Fellowship Bracelet," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit Q.



32.     Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets, sold as Item No. RW1814BGD and others, which are substantially similar to the protected Work of Plaintiff referenced above, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit R.



33.     Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "Forever Fellowship Bracelet" Work.

34.     Plaintiff, through its predecessor in interest, received from the United States Copyright Office Certificate of Registration VA 1-125-963, for the Gold Craft Fashions jewelry design and catalog in which the "Forever Fellowship Bracelet" Work is depicted, having an Effective Registration Date of December 7, 2001, which Certificate (including the assignment thereof) was previously attached hereto and incorporated herein by reference as Exhibit L.

35.     In or about 1991, Plaintiff, through its predecessor in interest, created its work known as "Rediscovered Treasure Bracelet," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit S.



36.     Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets, sold as Item Nos. RW1810BGD and RW1815BSL, which are substantially similar to the protected Work of Plaintiff referenced above, photographs of which are reproduced below, and incorporated collectively herein by reference as Exhibit T.

 

37.     Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "Rediscovered Treasure Bracelet" Work.

38.     Plaintiff, through its predecessor in interest, received from the United States Copyright Office Certificate of Registration VA 1-125-963, for the Gold Craft Fashions jewelry design and catalog in which the "Rediscovered Treasure Bracelet" Work is depicted, having an Effective Registration Date of December 7, 2001, which Certificate (including the assignment thereof) was previously attached hereto and incorporated herein by reference as Exhibit L.

39.     On or about November 12, 2012, Plaintiff applied to the United States Copyright Office to register its "Rediscovered Treasure Bracelet" Work, a copy of which application is attached hereto as Exhibit U.  Plaintiff has not yet received the Federal Copyright Certificate therefor.

40.     In or about 2000, Plaintiff, through its predecessor in interest, created its work known as "Classic Dome," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit V.



41.     Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets, sold as Item Nos. RW1816BSL and RW1817BGD, which are substantially similar to the protected Work of Plaintiff referenced above, photographs of which are reproduced below, and incorporated collectively herein by reference as Exhibit W.

 

42.     Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "Classic Dome" Work.

43.    Plaintiff, through its predecessor in interest, received from the United States Copyright Office Certificate of Registration VA 1-131-182, for the "Gold Craft Associates Fall Catalog 2000" jewelry design and catalog in which the "Classic Dome" Work is depicted, having an Effective Registration Date of December 7, 2001, which Certificate (including the assignment thereof) is attached hereto and incorporated herein by reference as Exhibit X.

44.    On or about November 12, 2012, Plaintiff applied to the United States Copyright Office to register its "Dome Collection" Work of which the "Classic Dome" Work is a part, a copy of which application is attached hereto as Exhibit Y.  Plaintiff has not yet received the Federal Copyright Certificate therefor.

45.    In or about 2000, Plaintiff, through its predecessor in interest, created its work known as "THE LOVE KNOT," which is a decorative bracelet, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit Z.



46.    Thereafter, Plaintiff learned that Defendants have been copying, reproducing, manufacturing, importing, distributing, displaying, marketing, and selling metal bracelets, sold as Item No. RW1811BGD, which are substantially similar to the protected Work of Plaintiff referenced above, a photograph of which is reproduced below, and incorporated herein by reference as Exhibit AA.



47.    Plaintiff has been and is the sole proprietor of all right, title, and interest, including copyright, in and to the "THE LOVE KNOT" Work.

48.    Plaintiff, through its predecessor in interest, received from the United States Copyright Office Certificate of Registration VA 1-220-847, for the "The Ronaldo Collection" website in which the "THE LOVE KNOT" Work is depicted, having an Effective Registration Date of December 7, 2001, which Certificate (including the assignment thereof) was previously attached hereto and incorporated herein by reference as Exhibit C.

49.    Plaintiff received from the United States Copyright Office Certificate of Registration VA 1-815-649, for the "THE LOVE KNOT and 'ROMANCE CARD' Package Insert" Work, having an Effective Registration Date of April 20, 2012, which Certificate is attached hereto and incorporated herein by reference as Exhibit BB.

50.    Defendants individually, or by and through their agents, employees, and representatives, with notice of Plaintiff's right, title, and interest in and to Plaintiff's Works, and without Plaintiff's authorization, have used Plaintiff's Works to manufacture, reproduce, copy, publish, display, distribute, transmit, sell, and otherwise market their Infringing Merchandise.

51.    Upon information and belief, Defendants willfully and deliberately infringed said Plaintiff's copyright by copying Plaintiff's Works, and manufacturing, reproducing, importing,

publishing, displaying, distributing, transmitting, selling, or otherwise placing on the market Defendants' Infringing Merchandise and, thus, using Plaintiff's Works without authorization, all to Plaintiff's detriment.

52.     Upon information and belief, Defendants have copied, manufactured, reproduced, imported, published, displayed, distributed, transmitted, marketed, promoted, and sold the Infringing Merchandise and will, unless restrained, continue to do so in the future.

53.     Defendants' infringement of Plaintiff's copyrights has caused and will continue to cause immediate and irreparable harm to Plaintiff unless enjoined by this Court.

## COUNT II

## COMMON LAW TRADEMARK INFRINGEMENT

54.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 53 herein as though fully set forth.

55.     Plaintiff's principal, known as Ronaldo, is a master artisan and well recognized expert jewelry artist.

56.     Ronaldo is so widely recognized as an expert that he has trained at least forty-eight (48) artisans in the craft of jewelry design, many of whom have achieved the position of master craftsmen.

57.     Beginning in or about 1991, Plaintiff and its predecessor in interest developed nearly 900 distinctive handcrafted jewelry designs, including Plaintiff's Works, which Plaintiff sells and markets in interstate commerce (the "Ronaldo Collection").

58.     Plaintiff sells its distinctive jewelry through thousands of catalogs and other marketing materials it has distributed over the years, as well as through marketing online and at

trade shows, and through its long-cultivated, specialized, and highly valuable knowledge of and relationships with decision-makers at certain jewelry retailers who are customers, or prospective customers, which Plaintiff has developed through research, trial and error, and significant investment over many years.

59.     Plaintiff and, previously, Plaintiff's predecessor in interest marketed the Ronaldo Collection lines of jewelry and accessories since their creation and Plaintiff continues to design and market new lines.

60.     Plaintiff, through its predecessor in interest, adopted its distinctive RONALDO and THE RONALDO COLLECTION trademarks (collectively referred to herein as "Plaintiff's Marks") at least as early as 1999.  Commencing in or about 1999, Plaintiff's predecessor in interest used Plaintiff's Marks in connection with its distinctively designed jewelry and accessories, including Plaintiff's Works.  Such use has been substantially exclusive and includes applying it to packaging and marketing, as well as labels and tags affixed to Plaintiff's jewelry that it has sold and marketed in interstate commerce.

61.     Since 1999, Plaintiff, through its predecessor in interest, has used and promoted Plaintiff's Marks in connection with its distinctive Ronaldo Collection jewelry designs and has experienced significant sales success and sold millions of items to jewelry stores and major retailers generating millions of dollars in annual wholesale and retail revenue through sales in no less than thirty-five (35) states and five (5) countries.

62.     Through Plaintiff's, and, previously, its predecessor in interest's, extensive sales and marketing, through written and online marketing materials and at trade shows, as well as the marketing and relationships with jewelry stores and major retailers developed and nurtured by

Plaintiff and its predecessor in interest over the last decade, consumers of Plaintiff's line of distinctive jewelry have come to recognize Plaintiff's Marks as being associated solely with and emanating solely from a single source, namely Plaintiff.

63.     At the time Plaintiff, through its predecessor in interest, entered the jewelry business, Plaintiff was the first and only business to produce and market the Ronaldo Collection line of distinctive jewelry designs in connection with Plaintiff's Marks until approximately 2012 when companies, such as Defendant Running Wild, among others, began plagiarizing Plaintiff's Marks and designs.

64.     As Plaintiff's sales increased, the popularity and success of its designs increased and Plaintiff's Marks and designs became better and more widely known.  By 2012, Plaintiff's Marks and designs were so popular, recognized, and desired that third parties began to plagiarize Plaintiff's Marks and designs.

65.     On April 13, 2012, Plaintiff applied to the United States Patent and Trademark Office to register its THE RONALDO COLLECTION trademark for use in connection with jewelry and jewelry cleaning solution (referred to herein as the "Trademark Application").  A copy of which Trademark Application is attached hereto and incorporated herein by reference as Exhibit CC.

66.     Plaintiff's THE RONALDO COLLECTION trademark was published for opposition and no opposition was filed.  While Plaintiff's Trademark Application remains pending at this time, Plaintiff expects registration of its THE RONALDO COLLECTION trademark to issue within the next few months.

67.     Plaintiff owns and enjoys common law rights throughout the United States in and to Plaintiff's Marks and the appurtenant goodwill associated therewith, which rights are superior to any rights Running Wild may claim in and to such marks.

68.     Plaintiff's Marks are strong, arbitrary, and distinctive having been in use for over a decade.

69.     Running Wild is using a mark which is identical in sound, meaning, appearance, and commercial impression and otherwise substantially similar to Plaintiff's Marks in connection with the Infringing Merchandise.

70.     Running Wild is telling customers, including a representative of Plaintiff, that it has "RONALDO" bracelets in connection with the Infringing Merchandise.

71.     Running Wild's Infringing Merchandise is virtually identical in character to Plaintiff's Works and is sold in the same channels of commerce at a fraction of the price of Plaintiff's Works, at trade shows, markets, online, and otherwise.

72.     Running Wild offers its Infringing Merchandise to the same distributors, boutiques, jewelry stores, and major retailers as Plaintiff.

73.     Running Wild sells its Infringing Merchandise to distributors, boutiques, jewelry stores, and major retailers who compete with the boutiques, jewelry stores, and major retailers that purchase Plaintiff's Works, which competing boutiques, jewelry stores, and major retailers are located and may display the Infringing Merchandise and use Plaintiff's Marks in near proximity to the boutiques, jewelry stores, or major retailers that purchase, or consider purchasing, Plaintiff's Works or Plaintiff's other jewelry designs.

74.     Running Wild's unauthorized use of a mark identical or substantially similar to Plaintiff's Marks in interstate commerce in connection with the Infringing Merchandise was and is intended to and will likely confuse, deceive, or cause mistake among purchasers of the Infringing Merchandise and Plaintiff's Works as to the source, origin, and sponsorship thereof and the association of Plaintiff therewith, and has and will continue to harm Plaintiff's goodwill and adversely affect Plaintiff's ability to conduct interstate commerce.

75.     Plaintiff is the owner and proprietor of all right, title, and interest in and to Plaintiff's Works and Plaintiff's Marks, including but not limited to copyright, trademark, and trade dress in the creative and original elements thereof, and it has not licensed or otherwise authorized Defendants to reproduce, manufacture, import, display, market, sell, or distribute Plaintiff's Works or any derivative work, or to reproduce, publish, display, distribute, transmit, or otherwise use Plaintiff's Marks or dress, including without limitation, in the marketing of the Infringing Merchandise.

76.     Plaintiff's Marks are unique, arbitrary, and inherently distinctive.  The inherent distinctiveness of Plaintiff's Marks is used and understood to identify Plaintiff's brand, to distinguish Plaintiff's jewelry from those manufactured or sold by others, and to indicate the source and origin of such jewelry.

77.     For over a decade, Plaintiff, through its predecessor in interest, has extensively advertised and promoted its distinctive handcrafted jewelry designs, including without limitation Plaintiff's Works, using Plaintiff's Marks, and it has expended great time, effort, and hundreds of thousands of dollars in connection therewith.  Plaintiff promotes its distinctive handcrafted jewelry designs and Plaintiff's Marks by participating in trade shows and other display events,

21

visiting buyers at their offices and elsewhere, through online marketing, and through the dissemination of brochures and catalogs. By offering a variety of handmade designs, Plaintiff makes it possible for devoted customers to acquire collections of handmade jewelry items, thereby building brand recognition and loyalty.

78.     As a result of Plaintiff's substantial, continuous, and extensive advertising, promotion, and sales, Plaintiff's Marks have acquired secondary meaning so that they identify Plaintiff's goods, and distinguish them from goods manufactured by others.  Plaintiff's Marks have acquired source-identifying meaning and valuable goodwill, all of which operates for the benefit of Plaintiff.  Plaintiff's Marks are widely and favorably accepted and recognized as identifying Plaintiff and its goods, or at least the goods of a single source, albeit an anonymous one.

79.     Running Wild's infringement of Plaintiff's Marks is intentional.

80.     Running Wild's intentional and willful infringement of Plaintiff's Marks has caused and will continue to cause immediate and irreparable harm to Plaintiff unless enjoined by this Court.

### COUNT III

### UNFAIR COMPETITION - LANHAM ACT

81.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 80 herein as though fully set forth.

82.     Running Wild has, through its infringement of Plaintiff's Marks and Plaintiff's Works, and the other conduct described above, engaged in unfair and deceptive trade practices and unfair competition in violation of Section 43(a) of the Lanham Act.

22

83.     Upon information and belief, Running Wild has been reproducing, copying, distributing, importing, promoting, advertising, and otherwise placing on the market in interstate commerce the Infringing Merchandise since at least as early as October 1, 2012, and has willfully and deliberately sought to benefit from, and to trade upon, the good works, good name, good reputation, and goodwill of Plaintiff, and upon Plaintiff's Works and Plaintiff's Marks, all to Plaintiff's damage and detriment.

84.     Running Wild's commercial advertising, promotion, and use of Plaintiff's Works and Plaintiff's Marks, alone or in combination with Plaintiff's other intangible property and assets, constitutes a false or misleading description of fact, false designation of origin, palming off, and unfair competition that is likely to deceive, and that has in fact deceived, actual and potential customers into believing that the Infringing Merchandise originates with Plaintiff, or is made by Plaintiff, or is available through Running Wild as an authorized agent of, or in association or affiliation with, or under the sponsorship of, Plaintiff.  As a result of this false designation of origin, palming off, and unfair competition, Plaintiff's base of customers and its ability to build upon its base and its brand has been diverted from Plaintiff.

85.     The Infringing Merchandise are unauthorized, inferior reproductions of Plaintiff's Works and infringe upon Plaintiff's Marks and its other intellectual property and proprietary rights.

86.     Cheap copies of Plaintiff's most popular lines are saturating the market, unfairly competing with Plaintiff's quality goods and depressing to the point of near eradication the demand for Plaintiff's more expensive products.

87.     Plaintiff has no control over the quality or craftsmanship of Running Wild's Infringing Merchandise, or the use of Plaintiff's Works or Plaintiff's Marks by Running Wild. Running Wild's failure to produce jewelry evincing the quality of Plaintiff's jewelry, including but not limited to Plaintiff's Works, as well as any other failure, neglect, or default by Running Wild in conjunction with the manufacture, distribution, sale, marketing, and customer service of the Infringing Merchandise in association with (but without authorization) Plaintiff's Works and Plaintiff's Marks will reflect adversely on Plaintiff as the perceived provider thereof, and will thus hamper Plaintiff's efforts to protect its outstanding reputation for high quality in design, metalwork, aesthetics, composition, and construction that represent the reputation and goodwill of Plaintiff's distinctive handcrafted jewelry lines.  This has resulted and will continue to result in lost business and damage to Plaintiff's reputation and goodwill.

88.     Running Wild's intentional and willful infringement of Plaintiff's Marks and Plaintiff's Works, false designation of origin, palming off, and unfair competition has caused and will continue to cause immediate and irreparable harm to Plaintiff unless enjoined by this Court.

**COUNT IV**

**UNFAIR COMPETITION**

89.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 88 herein as though fully set forth.

90.     Defendant Running Wild has, through the conduct described above, engaged in unfair trade practices and unfair competition.

91.     Upon information and belief, Running Wild has been reproducing, copying, distributing, and otherwise placing on the market the Infringing Merchandise since at least as

early as October 1, 2012, and engaging in the above-mentioned conduct with the intent to misappropriate the labors and expenditures of Plaintiff and confuse or deceive purchasers as to the source or origin of the Infringing Merchandise for Running Wild's own unfair profit.

92.     Running Wild's conduct is likely to cause confusion or deceive purchasers of the Infringing Merchandise as to the source or origin of the Infringing Merchandise and upon information and belief, has caused such confusion and deception.

93.     Running Wild has willfully and deliberately sought to benefit from, and to trade upon, the good works, good name, and good reputation of Plaintiff, all to Plaintiff's financial damage and detriment, including by injuring and impairing the goodwill and reputation of Plaintiff in excess of any jurisdictional minimum of this Court.

94.     Running Wild's unfair competition will continue unless enjoined by this Court.

WHEREFORE, Plaintiff demands as follows:

1.     That a temporary restraining order and permanent injunction be issued restraining Defendants, their agents, servants, employees, successors, assigns, and all others in concert or privity with them from infringing Plaintiff's Work and from manufacturing, reproducing, importing, publishing, displaying, distributing, transmitting, selling, or otherwise placing on the market the Infringing Merchandise and, thus, using Plaintiff's Work without authorization;

2.     That a temporary restraining order and permanent injunction be issued restraining Defendants, their agents, servants, employees, successors, assigns, and all others in concert or privity with them from infringing Plaintiff's Marks, whether in connection with the Infringing Merchandise or otherwise, without authorization;

3.    That a temporary restraining order and permanent injunction be issued restraining Defendants, their agents, servants, employees, successors, assigns, and all others in concert or privity with them from engaging in the unfair competition and deceptive trade practices described above;

4.    That Defendants be required to account to Plaintiff for Defendants' profits and the actual damages suffered by Plaintiff as a result of Defendants' infringement;

5.    That Defendants be ordered to surrender to Plaintiff all property, tangible and intangible including, but not limited to all goods, merchandise and materials which infringe upon Plaintiff's Work or Plaintiff's Marks, and all tooling, templates, patterns, or other means and media used by Defendants to copy, manufacture, reproduce, publish, display, distribute, transmit, market, promote, license, and sell Defendants' Infringing Merchandise;

6.    That Plaintiff be awarded actual damages and profits or statutory damages against Defendants, in an amount to be determined, subject to Plaintiff's election with respect thereto;

7.    That Defendants be required to pay treble damages for their violations of the Lanham Act, 15 U.S.C. § 1125, or such other applicable law.

8.    That Defendants be compelled to pay Plaintiff's costs and attorney fees incurred in connection with this action;

9.    Trial by jury of all issues so triable; and

10.    All other and further relief to which Plaintiff may otherwise be entitled.

Respectfully submitted,

ELLIE B. WORD, MSB# 100408
ALEC M. TAYLOR, MSB# 102874

KREBS, FARLEY & PELLETERI, PLLC
One Jackson Place
188 E. Capitol Street, Suite 900
Jackson, Mississippi 39201
601-968-6710 (telephone)
601-968-6708 (facsimile)
eword@kfplaw.com
ataylor@kfplaw.com
*Attorneys for Plaintiff, Ronaldo Designer Jewelry, Inc.*

<u>VERIFICATION</u>

I hereby verify that all of the information contained in the foregoing Complaint is true to the best of my knowledge, information and belief.

_Ronnie E. Needham_

RONNIE E. NEEDHAM, President of
RONALDO DESIGNER JEWELRY, INC.

STATE OF INDIANA                    )
                                                        ) ss
COUNTY OF _Harrison_           )

Subscribed and sworn to before me by RONNIE E. NEEDHAM, President of RONALDO DESIGNER JEWELRY, INC. on November _19_, 2012.

My Commission expires: _January 1, 2016_.

_Jo Ellen Peers_

Notary Public

JO ELLEN PEERS
NOTARY PUBLIC, STATE OF INDIANA
FLOYD COUNTY
MY COMMISSION EXP. JAN 1, 2016